UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISH COLLINS,

    Plaintiff,

v.                                                                     Case No. 8:19-cv-162-T-24 JSS

ZOLTAN BERECZKI, D.O., ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's Daubert Motion to Exclude Testimony of Robert Simon, M.D. (Doc. No. 54). Defendant Zoltan Bereczki, D.O. opposes the motion. (Doc. No. 55). As explained below, the motion is granted in part and denied in part.

**I. Background**

Plaintiff Cherish Collins filed this lawsuit against Zoltan Bereczki, D.O., asserting a claim of medical negligence. Specifically, Plaintiff claims that Defendant was negligent in providing medical care to her with respect to two spinal surgeries that he performed on her. One of her contentions is that Defendant performed a wrong-sided surgery on her right side, despite all of her pain being on her left side. She also contends that Defendant did not meet the standard of care because he first met with her on the morning of surgery (after she had changed into surgery clothes and had an IV in) and because he changed the type of surgery he performed (from a left-sided surgery to two surgeries—one right-sided and one left-sided). Currently pending before the Court is Plaintiff's Daubert motion directed at Defendant's expert.

**II.  Standard of Review**

This Court performs "a gatekeeping role" regarding admissibility of expert testimony.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).  Federal Rule of Evidence 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.  The proponent of the expert testimony has the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of the following prongs:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1994 (11th Cir. 2010).

**III.  Plaintiff's Daubert Motion**

In the instant motion, Plaintiff asks the Court to exclude the testimony of Dr. Simon, the Defendant's expert.  Dr. Simon is a surgeon who will express opinions that Defendant met the standard of care with respect to his treatment of Plaintiff.  Plaintiff argues that Dr. Simon should be precluded from testifying, because he did not employ proper methodology by not reviewing all of Plaintiff's relevant medical records, and as such, his opinions are not reliable.

**A. Dr. Simon's Opinions**

Dr. Simon asserts four general opinions in his expert report. (Doc. No. 55-1). First, Dr. Simon opines that the surgical procedures performed by Defendant were appropriate and indicated by Plaintiff's medical records and reports. (Doc. No. 55-1, p. 2). Dr. Simon explained during his deposition that Defendant was performed a central disc compression, and as such, it did not matter which side Defendant operated on in order to do a central decompression. (Doc. No. 52-1, depo. p. 47-49).

Second, Dr. Simon opines that it was appropriate and within the standard of care for Defendant to meet with Plaintiff for the first time on the morning of her surgery to discuss the surgeries to be performed and to obtain her consent, as long as there was a preoperative evaluation provided by a qualified individual who provided the information essential to the surgeon to make the decision whether or not to operate. Dr. Simon further opines that there is no specific time requirement provided by the standard of care as to when discussions have to occur in order to obtain informed consent so long as the discussions outline the nature of the procedure as well as its risks and benefits. (Doc. No. 55-1, p. 2).

Third, Dr. Simon opines that Defendant's post-operative care was appropriate and within the standard of care, because Plaintiff was not a local resident and it was appropriate for immediate post-surgical care to be provided by other qualified personnel at the Laser Spine Institute ("LSI"). There was no evidence that Defendant refused to provide Plaintiff with post-operative care. (Doc. No. 55-1, p. 2).

Fourth, Dr. Simon provides the following opinion:

> There is insufficient evidence to conclude to a reasonable degree of medical probability that the surgical procedures performed by Dr. Bereczki caused any permanent injury to the patient. Residual neuropathy is a common complication of these types of operations

> and there is no indication here that this was caused specifically by any interventions done by Dr. Bereczki.

(Doc. No. 55-1, p. 2). When asked during his deposition if residual neuropathy is a known complication of the surgeries Defendant performed on Plaintiff, Dr. Simon responded: "[S]ince I don't have specific records to refer to, the information I have at this point, that is a correct statement." (Doc. No. 52-1, depo. p. 82).

Dr. Simon admitted during his deposition that he did not review many of the relevant documents, such as: (1) Plaintiff's post-op imaging films and reports; (2) Dr. Harrod's medical records of his treatment of Plaintiff (including surgery) after Defendant performed Plaintiff's surgeries; (3) Plaintiff's physical therapy notes from physical therapy performed prior to her two surgeries with Defendant; (4) the audit trail regarding the nerve pathway sheet, from which there is a dispute regarding whether Plaintiff filled it out, and the nerve pathway sheet is the main evidence to support Defendant's contention that Plaintiff complained of right-sided pain; (5) the EMG nerve conduction study of Plaintiff's left lower extremity; (5) medical records from Plaintiff's pain management physician, Dr. Johnston; and (6) Plaintiff's medical records from before she received treatment from Defendant at LSI. (Doc. No. 52-1, depo. p. 37-38, 50, 68, 71-72, 88-89, 91-92, 96-98). At the end of his deposition, Dr. Simon stated that he was going to ask to look at Plaintiff's medical records from before her treatment at LSI and after her surgeries with Defendant at LSI in order to get "a full picture." (Doc. No. 52-1, depo. p. 97-98).

### B. Dr. Simon's Methodology and the Reliability of His Opinions

Plaintiff asks the Court to exclude Dr. Simon's testimony, because he did not employ proper methodology by not reviewing all of her relevant medical records, and as such, his opinions are not reliable. Dr. Simon did not review Plaintiff's medical records from the time before her treatment at LSI or after the surgeries performed by Defendant. Dr. Simon did,

4

however, review Plaintiff's deposition and the deposition of her subsequent surgeon, Dr. Harrod. (Doc. No. 52-1, depo. p. 95).

The Court finds that Dr. Simon's review of incomplete medical records does not prevent the admissibility of his first three opinions—that Defendant's performance of a right-sided surgery was appropriate and indicated by Plaintiff's medical records; that it was appropriate and within the standard of care for Defendant to meet with Plaintiff for the first time on the morning of her surgery to discuss the surgeries to be performed and obtain her consent; and that Defendant's post-operative care was appropriate and within the standard of care. All of these opinions can be reliably based on Dr. Simon's review of Plaintiff's medical records from LSI where she treated with Defendant. See Dawsey v. Carnival Corp., 2018 WL 4854651, at *5 (S.D. Fla. Oct. 5, 2018)(finding that although the doctor's review of incomplete medical records to support his causation opinion was problematic and subject to substantial challenge, the court's decision to grant or deny the Daubert motion on the issue would likely be upheld due to the considerable discretion afforded to the court as a gatekeeper).

Defendant's fourth opinion—that there is insufficient evidence to conclude to a reasonable degree of medical probability that the surgical procedures performed by Defendant caused any permanent injury to Plaintiff and that there is no indication that Plaintiff's residual neuropathy was caused specifically by Defendant—is not based on any proper methodology. Dr. Simon failed to review all of Plaintiff's medical records, and her medical records from after her surgeries with Defendant are clearly relevant to Dr. Simon's fourth opinion. Dr. Simon's failure to review all of Plaintiff's medical records makes his fourth opinion unreliable, and as such, the Court agrees that it should be excluded. See Guinn v. Astrazeneca Pharmaceuticals, LP, 602 F.3d 1245, 1255 (11th Cir. 2010)(affirming the district court's decision to exclude the doctor's

opinion due to the doctor failing to conduct the standard diagnostic techniques she normally used to rule out other potential alternative causes for the plaintiff's diabetes; the doctor failed to interview the plaintiff and only reviewed some of the plaintiff's medical records).

### IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's <u>Daubert</u> Motion to Exclude Testimony of Robert Simon, M.D. (Doc. No. 54) is **GRANTED** to the extent that Dr. Simon cannot testify regarding his fourth opinion set forth in his expert report; otherwise, the motion is **DENIED**.

DONE AND ORDERED at Tampa, Florida, this 18th day of May, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record